UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,   CRIMINAL NUMBER 06-20331

          Plaintiff,   HONORABLE DENISE PAGE HOOD

v.

**D-1   ANNE LOCKWOOD,**

**D-2   FUPING LIU,**

**D-3   MICHAEL HAEHNEL,**

          Defendants.

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, through its undersigned counsel, hereby submits this Sentencing Memorandum in support of its positions regarding the sentencings of Anne Lockwood, Fuping Liu, and Michael Haehnel. The government urges the Court to impose the maximum sentences permitted under the plea agreements as to each defendant in light of the seriousness of their offenses, the need to deter such conduct by similarly situated employees, and the importance of protecting competitive edge intellectual property from being stolen and compromised.

**The Facts Constituting the Crime**

The Court is familiar with the facts in this case based on the pretrial hearings, the multiple briefs of the parties, and the Presentence Reports. The factual recitation contained in the Presentence Reports accurately describes the conduct of the defendants. In basic terms, Anne Lockwood and Fuping Liu, both former employees of Metaldyne Corporation, wanted to develop a Chinese company, the Chongqing Huafu Industry Corporation ("Huafu"), to displace

Metaldyne as the supplier of powdered metal connecting rods to the U.S. truck manufacturer, Navistar. In order to accomplish this, Lockwood and Liu unlawfully obtained internal and confidential business information from Metaldyne and gave some of it to Huafu to help Huafu compete more effectively against Metaldyne. The stolen information included a variety of internal records concerning pricing, processing, costs, and designs, and also included some of the most closely guarded and valuable engineering information Metaldyne owned: its internal spreadsheets containing the calculations needed to efficiently design the "preform" for a powdered metal connecting rod.

The compromised information is extremely important to Metaldyne's ability to maintain its competitive edge in the powdered metal parts manufacturing business.

### The Plea Agreements and the Sentencing Guidelines

The plea agreements contain stipulations that reflect the consensus of all the parties as to the method for estimating the intended loss in this case. Because the goal of the defendants was to divert Metaldyne's business with Navistar to the Chinese company, Huafu, the starting point for recognizing the scope of the intended loss is the value of that contract, which the parties agree was $ 9,646,000 over five years. However, the parties further recognize that the fair market value of the licensing of Metaldyne's manufacturing technology for five years at that time was between $1 million and $2.5 million. The parties also agree, however, that because the defendants did not succeed in their scheme, Metaldyne cannot show that it suffered any loss of business revenues or profits as a result of defendants' conduct. The parties therefore agree that the lack of such losses should be taken into account by the Court, and that the defendants should be eligible for a two-point reduction in the base offense level based on this factor.

### Fashioning Appropriate Sentences

With respect to **Anne Lockwood**, the government urges the Court to impose a sentence of 33 months custody. Lockwood was the primary actor and driving force in the unlawful conspiracy. She used her connections with Metaldyne to gain access to all of the stolen business information, most of which was recovered by the FBI at her home. She brought her husband and co-defendant, Michael Haehnel, into the scheme. As Senior Vice President with a career at the top of the powdered metal industry, Lockwood knew better than anyone how serious her conduct was, and how potentially detrimental the theft of the information was to Metaldyne. She was motivated by greed and revenge. Lockwood is the most culpable defendant and should receive the most significant custody sentence permissible under the plea agreement.

The government advocates an 18-month custodial sentence for **Fuping Liu**. As the Court knows, Dr. Liu holds a doctorate in engineering science from the Thayer School of Engineering at Dartmouth College. As an expert in metallurgy, he was unquestionably aware of how significant the stolen information was to Metaldyne. He well-knew how much harm he and Lockwood caused by using the stolen information to benefit themselves and a Metaldyne competitor. It would send exactly the wrong message to the international business community for the Court to impose a non-punitive, non-custodial sentence under circumstances like those presented by this case, or to depart below the already reasonable sentence contemplated by the Rule 11 Plea Agreement. The agreement itself directly addresses the fact that Metaldyne was very fortunate not to lose its powdered metal line of business, and also somewhat generously reduces Fuping Liu's base offense level by considering him a "minimal" participant.

3

The grounds set forth in defendant Liu's Sentencing Memorandum essentially boil down to two arguments that the Court should abandon the guidelines calculation and impose a sentence of probation: (1) the defendant's conduct was not very bad; and (2) defendant has "suffered enough" because he has been separated from his family during the pendency of this case. As to the seriousness of defendant's crime, the Court need look no further than to the defendant's own written statement that was provided to the Probation Department. Defendant admits to receiving from Lockwood "Metaldyne's confidential and proprietary cost and manufacturing information" which he knew was not lawfully possessed by Lockwood and which he knew "Anne Lockwood would send to Huafu." See Presentence Investigation Report at 9. The defendant cannot plead guilty and at the same time argue for probation based on a lack of guilt. The crime is an extremely serious one and the defendant's lesser role and the lack of actual loss to the victim have been fully accounted for in the *bargained-for* terms of the plea agreement. As to the second major ground, there is no question that family separations – for whatever the reason – can be very painful and difficult. It should be noted, however, that defendant could have arranged to move his family back to the United States while awaiting trial and free on bond, but chose not to do so. The defendant and his minor children are United States citizens. The pendency of the prosecution did not prevent defendant from reuniting and living with his family in the United States over these past four years. The decision to remain separated was made by the defendant and his wife, just as the decision not to reconcile their marriage after his case is over rests upon them alone. It was the defendant's own conduct that has caused him to be prosecuted and to experience negative consequences as a result. A sentence of probation for stealing crucial competitive engineering information to try to benefit a competitor would have no deterrent effect

4

and would tilt the criminal's cost-benefit analysis in favor of taking the risk to steal because the potential rewards would be great, and the penalty almost nothing. For these reasons, the government advocates a sentence of 18 months.

Regarding **Michael Haehnel**, the government also urges the Court to fashion the most serious custodial sentence permitted by the strictures of the plea agreement. Haehnel had a comparatively minor role in the offense. For reasons explained by government counsel during the plea colloquy, the parties agreed that Lockwood would plead guilty to a felony, and Haehnel to a 6-month misdemeanor, with the intent that he would be placed in a custodial setting for at least 12 months. Although the Probation Officer has determined that the terms proposed by the parties in the plea agreement – 6 months in custody, followed by one year of supervised release with the first 6 months of that also in a restrictive setting as fashioned by the Court – are not possible because supervised release cannot follow a sentence for a 6-month misdemeanor, the Court can still give effect to the intention of the parties by imposing up to 5 years of probation, the first 12 months of that in a custodial setting.

The government urges the Court to do just that. Although Haehnel is the least culpable of the three defendants, his conduct still deserves an appropriate penalty. Haehnel remained an employee of Metaldyne at the time Lockwood and Liu obtained the stolen Metaldyne information. The sentence agreed to by the parties is fair under all the circumstances, consistent with the goal of sentence parity, and should be imposed as set forth here.

## **CONCLUSION**

In considering the factors under 18 U.S.C. § 3353, the Court should weigh most heavily §§ 3553(a)(2)(A) and (B), which take into account the need for the sentence "**to reflect the**

**seriousness of the offense, promote respect for the law, and to provide just punishment for the offense**," as well as the need "**to afford adequate deterrence to criminal conduct**."   The parties spent considerable time, energy, study, and discussion in arriving at plea agreements that weighed the interests of the government and the public in deterrence, as well as the fact that the victim did not suffer financial loss, and a host of other issues.  The government respectfully asks the Court to impose sentences consistent with the plea agreements that will adequately deter similarly situated defendants – high level corporate executives who benefitted from years of employment and trust with their company only to abuse their positions to steal confidential information for the benefit of themselves and their employers' competitors – from engaging in the kind of conduct that the defendants committed in this case.

                                                  Respectfully submitted,

                                       s/ Terrence Berg
                                      TERRENCE BERG
                                      Acting United States Attorney
                                      (313) 226-9160
                                      TBerg@usa.doj.gov

                                      s/ Cynthia Oberg
                                      CYNTHIA OBERG  (P 36338)
                                      Assistant U.S. Attorney
                                      (313) 226-9701
                                      cynthia.oberg@usdoj.gov

                                      211 West Fort Street, Suite 2001
                                      Detroit, Michigan  48226

Dated: February 4, 2008

**CERTIFICATE OF SERVICE & FILING**

I certify that on this 4th day of February, 2009, the attached Sentencing Memorandum was served on counsel of record through the CM/ECF System if counsel is a registered user or, if not, by placing a true and correct copy in the United States mail, postage prepaid, addressed to:

Michael H. Gordner
Miller Canfield Paddock & Stone PLC
150 W Jefferson Ave Ste 2500
Detroit, MI, 48226
gordner@millercanfield.com, medel@millercanfield.com

Mark J. Kriger
LaRene & Kriger PLC
645 Griswold St Ste 1717
Detroit, MI 48226
mkriger@sbcglobal.net, bianca1717@sbcglobal.net

Edward C. Wishnow
240 Daines St
Birmingham, MI 48009
edwishnow@aol.com

                                            s/Julia Fabiszewski
                                            Julia Fabiszewski, Legal Assistant
                                            United States Attorney's Office